**MICROMEDIA, Plaintiff-Appellee,**

v.

**AUTOMATED BROADCAST CON-
TROLS, Defendant-Appellant.**

No. 85–1585.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1986.

David T. Lopez, Houston, Tex., for defendant-appellant.

Thomas M. Wheeler, Wagstaff, Alvis, Stubbeman, Seamster & Longacre, Roy B. Longacre, Abilene, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and IRVING L. GOLDBERG, and GARWOOD, Circuit Judges.

## OPINION

GARWOOD, Circuit Judge:

In this Texas law diversity case removed from state court, appellant challenges the district court's *in personam* jurisdiction over it due to faulty service of process. In addition, appellant claims that the district court erred in allowing recovery on a contract that was barred by the statute of frauds, and in denying appellant's claim for the sales price of other goods accepted but not paid for by appellee. We determine the district court had personal jurisdiction over appellant. The district court did, however, err in overruling appellant's statute of frauds defense as to a part of appellee's claim and in denying appellant any recovery or setoff for the sales price of other goods retained by appellee. Accordingly,

we reverse and remand to the district court for further proceedings consistent herewith.

### Facts and Proceedings Below

Plaintiff-appellee Micromedia, a partnership of Texas citizens formed for the purpose of establishing and operating a radio station in Eastland, Texas, accepted a bid from Parcom for the design, purchase, and installation of broadcasting equipment for its radio station. Parcom, a company essentially consisting of one individual, David Lee Parker, had an informal relationship as a representative of defendant-appellant Automated Broadcast Controls (ABC), a Maryland corporation with its principal place of business in that state. Under the agreement between ABC and Parcom, Parcom could relay price, delivery, and feature information to prospective buyers of ABC equipment and, upon delivery and payment for the equipment, ABC would pay Parcom a commission.

Micromedia wanted to obtain an automated broadcasting system which would permit its radio station to use prerecorded programs without having a live broadcaster present. Parcom convinced Micromedia to select an ABC system then being developed, known as the System 80. Micromedia arranged with a leasing company to purchase the System 80 with the understanding that Micromedia would then lease the equipment from that company. Shortly after the leasing company ordered the System 80, problems arose with its final development. Micromedia decided to remain with the System 80, but requested equipment for an interim system to get the station on the air. ABC put together an interim system to meet Micromedia's immediate need and shipped the equipment with an invoice to Micromedia. Micromedia attempted to use those items at its radio station. However, shortly after the delivery of the interim system, Micromedia contacted Parcom and said there were problems with the interim system equipment. Neither Micromedia nor the leasing company ever paid for the interim system equipment received from ABC or for the System

80. Micromedia had agreed to pay fifty percent of the order for the System 80 upon receipt of the interim equipment from ABC, but did not do so, claiming that the interim system did not work properly. The leasing company informed Micromedia that ABC had refused to furnish additional equipment without payment and then wrote ABC voiding the purchase order. The System 80 was never furnished. Micromedia ultimately filed suit against ABC.

Micromedia originally filed suit in a Texas district court, and attempted to serve ABC through the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b § 3, by serving the Texas Secretary of State. Micromedia alleged in its petition that ABC was conducting business in the state and could be sued through the Secretary of State in accordance with the Texas long-arm statute. The petition failed to allege that ABC did not maintain a place of regular business in the State of Texas or have a designated agent there upon whom service could be made in accordance with the statute. ABC then petitioned for removal to the United States district court, asserting that the federal court would have original jurisdiction as the case was one between citizens of different states and the amount in controversy exceeded $10,000.

After the case was removed, ABC filed a motion under Fed.R.Civ.P. 12(b) to dismiss for lack of personal jurisdiction. ABC alleged that the district court lacked *in personam* jurisdiction because ABC was not served in accordance with the Texas long-arm statute, that it was not subject to service under the Texas long-arm statute, and, furthermore, that ABC lacked sufficient minimum contacts with the State of Texas.

After the district court denied ABC's motion to dismiss for lack of personal jurisdiction, ABC filed its answer asserting, *inter alia*, the defense of the statute of frauds, Tex.Bus. & Com.Code Ann. § 2.201. The answer also contained two counterclaims. In its first counterclaim, ABC asked for the purchase price of the interim system equipment which it had shipped to Micromedia, and Micromedia had accepted and not paid

for, and also for consequential damages resulting from Micromedia's failure to pay. The second counterclaim was in essence one for damages for the allegedly malicious prosecution by Micromedia of its suit against ABC.

The case was tried to a jury. ABC, at the close of Micromedia's evidence and again at the close of all the evidence, moved for directed verdict, raising, among other things, its statute of frauds defense. These motions were overruled. The jury returned a verdict based on special interrogatories, finding in favor of Micromedia separately on each of its two contract claims, that respecting the System 80 and that respecting the interim system. It found against Micromedia on its fraud claims. In response to a single, globular interrogatory, it found $23,360 as Micromedia's damages. The jury also found that Micromedia had accepted the interim system goods delivered, exercised ownership over them, and had not paid for these goods, but that, apart from the failure to pay the purchase price, ABC was not damaged thereby. The court instructed the jury in this connection that ABC would be entitled to recover the agreed sales price for these goods, which was established by the evidence. The jury failed to find that the prosecution of this suit by Micromedia was malicious. The district court entered judgment against ABC in favor of Micromedia for $23,360. However, the judgment made no provision for recovery or setoff in ABC's favor respecting the purchase price of the interim system goods, and the district court did not expressly address that matter. ABC filed a motion for judgment notwithstanding the verdict, again raising the statute of frauds issue and ABC's entitlement to recover the purchase price of the interim system goods, and a motion for a new trial, both of which were denied without explanation. This appeal by ABC followed.

### Discussion

*I. Jurisdiction*

*A. Service of Process*

■ This suit was originally filed in Texas state court, and service of process was

governed by the Texas long-arm statute. The Texas long-arm statute in effect at the time this suit was filed was Tex.Rev.Civ. Stat.Ann. art. 2031b.[1] Micromedia attempted to serve ABC by serving the Texas Secretary of State in accordance with section 3 of article 2031b. Section 3 states that the Secretary of State may be served as a deemed agent for service of process for any foreign corporation engaged in business in the state if that corporation does not maintain a place of regular business in the state or a designated agent therein upon whom service may be made. Micromedia's original complaint failed to allege that ABC did not maintain in Texas a regular place of business or designated agent upon whom service could be made. ABC contends that the Texas courts hold that failure to allege in the petition facts showing compliance with these requirements of article 2031b renders service thereunder ineffective. *McKanna v. Edgar*, 388 S.W.2d 927 (Tex.1965). Micromedia admits that its original petition did not contain the required allegations for service under article 2031b; however, it maintains that its amended complaint cured any defects. Section 1448, 28 U.S.C., states that: "In all cases removed from any State court to any district court of the United States in which ... process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." Once the case is removed, it becomes subject to the Federal Rules of Civil Procedure. Fed.R.Civ.P. 81(c); *Usatorres v. Marina Mercante Nicaraguenses*, 768 F.2d 1285 (11th Cir.1985).

*See also* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1082 (1969); 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 9.168[4.–3] (1985). Amendment of service of process is governed by Fed.R. Civ.P. 4(h). Rule 4(h) states that the district court at its discretion may permit amendment of service of process unless such amendment would materially prejudice the other party. The district court granted Micromedia's motion to amend its pleading to conform with the Texas long-arm statute, and there is nothing in the record to show that the amendment prejudiced ABC.[2] The amended complaint conformed to the requirements of Tex.Rev.Civ. Stat.Ann. art. 2031b. There is no indication in the record whether this amended complaint was ever actually served; however, ABC did not at any time below assert, or make any objection on the basis, that the amended complaint was not served, and, therefore, any such objection is waived.

### B. Minimum Contacts

ABC contends that even if the service of process was procedurally valid, the district court lacked personal jurisdiction over it because ABC lacked the requisite minimum contacts with Texas. In this case, the jurisdiction is specific jurisdiction because the court's assertion of jurisdiction arises out of and is related to the nonresident defendant's contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).[3] When a controversy is related to or arises out of a nonresident defendant's contact with the forum state, then the relationship between the defendant, the forum state, and the litigation is

**1.** Article 2031b was repealed in 1985 by the Texas Legislature and enacted in generally the same form in the Texas Civil Practice and Remedies Code. *See id.* §§ 17.041–17.045.

**2.** We note that even if the case had remained in Texas courts, the Texas courts could have asserted jurisdiction over ABC, although under a different analysis. In *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex.1985), the Texas Supreme Court stated that the *McKanna* opinion was limited to default judgment situations. Under the Texas Rules of Civil Procedure, the only way in which a defendant can appear and

challenge the method of service is through a motion to quash citation under Tex.R.Civ.P. 122. Such an appearance is considered a general appearance. Therefore, the defendant's only relief in that situation is additional time in which to answer, rather than a dismissal if the defect in service is curable. *Kawasaki, supra,* at 202.

**3.** This is distinguished from general jurisdiction, which concerns a state's exercise of jurisdiction over a nonresident defendant in a suit not arising out of or related to the defendant's contact with that state. *Helicopteros, supra,* 104 S.Ct. at 1872.

the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1169 (5th Cir.1985). Even a single purposeful contact may be sufficient to meet the requirements of minimum contacts when the cause of action arises from the contact. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (contract action); *Thompson, supra,* at 1172 (tort action): *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333–34 (5th Cir.1982) (tort action), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). We must, therefore, examine the relationship between ABC, Texas, and this litigation. The district court found, with sufficient record support, that ABC had telephone conversations with Micromedia in Texas regarding the equipment, pursuant to which ABC shipped certain equipment to Micromedia in Texas. In addition, it was shown at trial that ABC entered into a contract, the contract to supply the interim system equipment, which was to be performed in part in Texas. The district court held that it had jurisdiction based on ABC's allegations of fraud and the telephone calls and shipment of equipment to Texas. ABC argues that because the jurisdiction was based on fraud, and fraud was not proved, ABC lacked minimum contacts. However, it is undisputed that a contract for the interim system existed between ABC and Micromedia. The contacts discussed above are sufficient for the assertion of jurisdiction on the contract claim. *McGee, supra; Thompson, supra.*

ABC's jurisdictional points of error are overruled.

## II. Contract Claims

### A. Statute of Frauds

ABC claims that it has a statute of frauds defense against any contract claims regarding the System 80. The statute of frauds provides that a contract for the sale of goods over $500 is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." Tex. Bus. & Com.Code Ann. § 2.201(a). The price of the System 80 was over $500 and, therefore, the System 80 contract comes within the statute. Micromedia claims that it produced sufficient writing to indicate a contract for sale and, in the alternative, any writing requirement is irrelevant because ABC judicially admitted the existence of a contract for the System 80.

■ Only one piece of writing offered by Micromedia could be construed as being signed by ABC. That document was a price quotation signed by Daryl Parker. The writing required by the statute of frauds may be signed by an agent of the party against whom enforcement is sought, *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 930 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), and the jury found that Parker was ABC's agent. Therefore we assume, *arguendo*, that the document satisfies the signature requirement. This document, however, was not sufficient to meet the statute of frauds, as it is an offer for an agreement that was not entered into until later, and the statute of frauds requires a writing sufficient to indicate that "a contract for sale *has been made*" (emphasis added).[4] *Martco v. Doran Chevrolet, Inc.*, 632 S.W.2d 927, 928–29 (Tex.App.—Dallas 1982, no writ). The "futuristic" nature of the writing disqualifies it from meeting this requirement of the statute of frauds. *Id. Martco* requires rejection of Micromedia's argument in this respect.

---

**4.** We observe that the "has been made" language finds no counterpart in the wording of the general statute of frauds. Tex.Bus. & Com.Code Ann. § 26.01. While the contract for sale of goods statute (section 2.201(a)) does state that "[a] writing is not insufficient because it omits or incorrectly states a term agreed upon," this provision does not dilute the requirement of the "has been made" language that the writing reflect that a contract of sale (whether or not all its terms are stated or stated correctly) is then in existence.

■ Micromedia also claims that the statute of frauds does not apply because ABC admitted the existence of the contract in its counterclaim. The statute provides that a contract not otherwise enforceable thereunder is enforceable if the party against whom enforcement is sought admits in court the existence of the contract. Tex.Bus. & Com.Code Ann. § 2.201(c)(2). The record clearly shows that ABC admitted the existence of the interim system contract, but it never admitted the existence of a contract between it and Micromedia to provide Micromedia with the System 80. ABC pleaded the statute of frauds as a defense, and Micromedia failed in its burden to establish facts that would take the case out of the statute of frauds. *Otto Vehle & Reserve Law Officers Ass'n v. Brenner*, 590 S.W.2d 147, 152 (Tex.Civ. App.—San Antonio 1979, no writ). Therefore, Micromedia was not entitled to recovery on the contract for the System 80, and the district court erred in overruling ABC's motions for instructed verdict on this claim. Under the jury's verdict and the evidence, it cannot be determined whether the $23,-360 damage finding in Micromedia's favor was based, in whole or in part, on Micromedia's System 80 contract claim. While the damages may be based solely on problems with the interim system, they just as easily may be based solely on the breach of the alleged System 80 contract, a theory on which ABC was entitled to judgment as a matter of law. Accordingly, we must reverse and remand for a new trial. *See Wells v. Hico Independent School District*, 736 F.2d 243 (5th Cir.1984), *cert. dismissed*, — U.S. —, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

### B. The Interim System

The jury found in response to the special issues that Micromedia accepted the interim system goods delivered by ABC, exercised ownership over those goods, and did not pay for them. The jury answered "none" to the following damages special interrogatory in this connection:

"What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly compensate Automated Broadcast Controls for incidental damages proximately caused by Micromedia's failure to pay, *other than the price of the goods*? [Emphasis in original.]

"If you find that Micromedia accepted and failed to pay for the goods delivered by Automated Broadcast Controls [which the jury did find], then *Automated Broadcast Controls will be entitled to recover the agreed sales price. You will not need to determine this price since it is established by the evidence.* [Emphasis added.]

"Under Texas law, which applies in this case, Automated Broadcast Controls also is entitled to recover incidental expenses directly attributable to Micromedia's failure to pay. These incidental expenses include:

"1. Shipping costs.

"2. Cost of attempting to collect, other than attorney fees.

"3. Interest on any amount borrowed to finance the goods delivered but only from the time that payment was due to be made by Micromedia."

For some unexplained reason, the district court gave ABC no recovery or credit in the judgment for the purchase price of the interim system goods.

ABC claims that under Tex.Bus. & Com. Code Ann. § 2.607(a) the buyer must pay the contract rate for the goods accepted. Micromedia argues that under Tex.Bus. & Com.Code Ann. § 2.607(b) acceptance does not impair other remedies, and that such other remedies include extinction of the price. *See* section 2.607 comment 6.

■ Micromedia is not entitled to keep the goods, exercise ownership over them, and also have the price made extinct. In answer to separate interrogatories, the jury found that Micromedia accepted the interim goods, and exercised ownership over them. These findings require the buyer to pay the purchase price. *Bowen v. Young*, 507 S.W.2d 600 (Tex.Civ.App.—El Paso 1974, no writ). Damages are not to

place the buyer in a better position than if the contract had been performed. *Neuman v. Spector Wrecking & Salvage Co., Inc.*, 490 S.W.2d 875 (Tex.Civ.App.—Beaumont 1973, no writ). Even though Micromedia, having accepted and exercised ownership over the goods, is not entitled to an extinction of the price as such, it is entitled to damages for the nonconformity of the goods if it gave notice to ABC of the nonconformity. There is evidence that Micromedia communicated to ABC that the interim system did not function properly, but there is no finding that any notice was given under section 2.607(c)(1).[5] Under Texas law, Micromedia's damages would be limited to recovery for nonconformity of the goods and the loss resulting in the ordinary course of events due to ABC's breach as determined in any reasonable manner. Tex.Bus. & Com.Code Ann. § 2.714(a). Since Micromedia did not pay for the accepted goods, these damages could be netted against the contract price. *See* Tex.Bus. & Com.Code Ann. § 2.714 comment 1. ABC is entitled to the cost of the goods minus the damage suffered by Micromedia. However, there is no finding as to the amount of any such damage.[6] Reversal is required and a new trial appropriate.

### Conclusion

We determine that the district court had jurisdiction over ABC. We hold that Micromedia is barred from recovery respecting the System 80 because of the statute of frauds, but may recover its damages respecting the interim system provided it gave appropriate notice to ABC, and that ABC may in any event recover the purchase price of the interim system. The judgment is reversed, and the cause is remanded for a new trial as to whether Micromedia gave adequate notice to recover

damages under section 2.714(a) respecting the interim system and, if so, the amount of such damages, same to be netted against the purchase price.

REVERSED and REMANDED for a partial new trial.

---

5. Arguably, the instructions in reference to the acceptance interrogatory and the jury's answer to it resolve this issue adversely to Micromedia; however, that is not clear, and as a new trial is required in any event, we deem it appropriate that it extend to this issue also (but not as to ABC's entitlement to recover the purchase price of the interim system goods.)

6. As previously noted, it cannot be ascertained to what extent, if any, the $23,360 which the jury found as Micromedia's damages on its contract claims related to the interim system, as opposed to the System 80.