Jonathan C. HORSLEY, et al.,
Plaintiffs, Appellants,

v.

MOBIL OIL CORPORATION,
Appellee. (Two Cases)

Nos. 93–1664, 93–1736.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1993.

Decided Feb. 3, 1994.

Christopher M. Perry, with whom Brendan J. Perry and Terance P. Perry, Holliston, MA, were on brief, for appellants.

Brian P. Flanagan, with whom F. Dore Hunter and Flanagan & Hunter, P.C., Boston, MA, were on brief, for appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

CYR, Circuit Judge.

We must decide whether either punitive damages or damages for loss of parental and spousal society allegedly caused by a nonfatal injury to a seaman aboard a vessel in territorial waters are recoverable in an unseaworthiness action under the general maritime law. On plenary review, *see Gaskell v. The Harvard Coop. Soc'y*, 3 F.3d 495, 497 (1st Cir.1993), we affirm the summary judgment entered against plaintiffs-appellants based on the analysis required under *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

## I

### BACKGROUND

Plaintiffs-appellants Jonathan C. Horsley and his wife, Elizabeth Horsley, allege that he sustained a back injury in the course of his duties aboard a vessel owned by defendant-appellee Mobil Oil Corporation while operating in the territorial waters of the Gulf of Maine. Their unseaworthiness action involves, *inter alia*, claims for punitive damages by Jonathan C. Horsley; and damages for loss of parental society by their minor son and loss of spousal society by Elizabeth Horsley. The district court entered summary judgment for Mobil on all three claims. 825 F.Supp. 424 (1993).[1]

## II

### DISCUSSION

The Supreme Court has decided that damages for loss of society are not cognizable in

---

**1.** Jurisdiction over this interlocutory admiralty appeal is based on 28 U.S.C. § 1292(a)(3). *See Martha's Vineyard Scuba Headquarters, Inc. v.*

*Unidentified, Wrecked, and Abandoned Steam Vessel*, 833 F.2d 1059, 1064 (1st Cir.1987).

a general maritime action for the wrongful *death* of a seaman, because "[i]t would be inconsistent with [the Supreme Court's] place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." *Miles*, 498 U.S. at 33, 111 S.Ct. at 326. The Court reasoned that the remedial limitations imposed by Congress in admiralty actions predicated on negligence likewise restrict an admiralty court's power to fashion damages remedies in actions under the general maritime law, such as the present unseaworthiness claim against a vessel where liability may be imposed without establishing fault. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94–95, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946) (noting unseaworthiness "is essentially a species of liability without fault"). Thus, the admiralty court's remedial autonomy is "both direct[ed] and delimit[ed]" by federal statute, *Miles*, 498 U.S. at 27, 111 S.Ct. at 323, insofar as Congress has spoken directly to the point in issue, *id.* at 31, 111 S.Ct. at 325, *citing Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978).

Two statutes are directly relevant to general maritime claims based on *fatal* injury: the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761, *et seq.*, and the Jones Act, 46 U.S.C.App. § 688, both enacted in 1920. DOHSA makes specific provision only for the recovery of damages for *pecuniary* loss. *See* 46 U.S.C.App. § 762 ("The recovery ... shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought...."). Notwithstanding that the fatal injury at issue in *Miles* did not take place on the high seas, the Supreme Court considered DOHSA indicative of congressional intent in cases involving fatal injuries to seamen in territorial waters as well. *Miles*, 498 U.S. at 31, 111 S.Ct. at 325.

Since the Jones Act does afford a right of action to dependents of seamen fatally injured in territorial waters, it formed the principal focus of inquiry in *Miles*. The Jones Act simply incorporated by reference the remedial scheme established twelve years earlier under the Federal Employers' Liability Act (FELA), 46 U.S.C.App. § 688. FELA, the progenitor of all federal liability schemes, simultaneously afforded a uniform cause of action for railroad workers and dispensed with traditional master-and-servant defenses. *See generally Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). FELA's language is unhelpful on its face, however, as it simply provides for "damages," without further elaboration. 45 U.S.C. § 51.

This seeming dead-end is averted, nevertheless, by Congress's adoption and incorporation, in the Jones Act, of the remedial scheme *previously* established under FELA. The courts may assume that Congress, at the time it enacted the Jones Act, was cognizant of the decisional law developed under FELA during the twelve-year interim between the enactment of the two statutes. *Miles*, 498 U.S. at 32, 111 S.Ct. at 325; *see generally Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law....").

The *Miles* Court relied extensively on just such a decision, *see Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), which revealed yet another evolutionary layer in the development of wrongful death statutes:

> In [*Vreeland*] the Court explained that the language of the FELA wrongful death provision is essentially identical to that of Lord Campbell's Act, 9 & 10 Vict. ch. 93 (1846), the first wrongful death statute. *Lord Campbell's Act* also did not limit explicitly the "damages" to be recovered, but that Act and the many state statutes that followed it *consistently had been interpreted as providing recovery only for pecuniary loss.*

*Miles*, 498 U.S. at 32, 111 S.Ct. at 325 (emphasis added), *citing Vreeland*, 227 U.S. at 69–71, 33 S.Ct. at 195. Finally, the *Miles* Court retraced the development of wrongful death statutes into the Twentieth Century and the meaning of the unelaborated FELA term "damages" became clear:

When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. We assume that Congress is aware of existing law when it passes legislation. There is no recovery for loss of society in a Jones Act wrongful death action.

*Id.*

Uniformity provided the companion rationale for the *Miles* decision. *See Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 402, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970) ("admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" (quoting *The Lottawanna,* 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1875))). As noted, damages awarded under DOHSA are restricted to pecuniary loss. *Miles* cautions that the traditional gap-filling function of the admiralty court is to be exercised only in furtherance of the presumed congressional objective of uniformity:

> We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. *We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress.*

*Miles,* 498 U.S. at 27, 111 S.Ct. at 323 (emphasis added). Thus, *Miles* "restore[d] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or the general maritime law[,]" by limiting damages in wrongful death actions to the amount of pecuniary loss. *Miles,* 498 U.S. at 33, 111 S.Ct. at 326.

## A. *Damages in Nonfatal–Injury Cases*

The district court relied primarily on *Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992), in holding that *Miles* precludes punitive damages and damages for loss of society under the Jones Act. *See also Smith v. Trinidad Corp.,* 992 F.2d 996 (9th Cir.1993) (adopting *Murray* reasoning) (per curiam); *and Lollie v. Brown Marine Serv., Inc.,* 995 F.2d 1565 (11th Cir.1993) (same). For the reasons discussed below, we agree.

Under the analysis obligated by *Miles,* we inquire whether Congress has preempted all interpretive discretion on the part of the admiralty court—as the traditional protector and benefactor of its wards—in extending damages relief for *non* pecuniary loss in the present context. At the outset, we note distinctions pertinent to our inquiry. First, since DOHSA is inapplicable to nonfatal injuries sustained by a seaman aboard a vessel operating in territorial waters, it has no direct bearing on the damages remedies presently at issue. Accordingly, whatever direct analogic bearing DOHSA had in *Miles* is diminished in the present context. Second, as concerns the Jones Act, *Vreeland* is inapposite to the availability of damages for *non* pecuniary loss in cases involving *non* fatal injuries.[2] The *Miles* methodology takes us beyond *Vreeland,* however.

In *Igneri v. Cie. de Transports Oceaniques,* 323 F.2d 257 (2d Cir.1963), the Second Circuit inquired into the availability of

---

2. At a time when wrongful death statutes were very much the exception, the *Vreeland* Court explicitly distanced its analysis from that involved in nonfatal injury cases:

> This [wrongful death] cause of action is independent of any cause of action the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had—*one proceeding on all together different principles.*

*Vreeland,* 227 U.S. at 68, 33 S.Ct. at 195 (emphasis added). These "all together different principles," of course, derived from Lord Campbell's Act, the first wrongful death statute: "It is a liability for the loss and damage sustained by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damage resulting to them, and for that only." *Id.* In sum, the evidence directly adduced by the *Miles* Court is not particularly probative beyond the discrete confines of wrongful death actions.

damages for loss of society under the Jones Act and concluded as follows:

> The failure of the Jones Act to confer ... a right [to loss of society/consortium damages] on the spouse of a seaman cannot be dismissed as an inadvertence. The policy of the Federal Employees Liability Act, the regime which the Jones Act made applicable to seamen, was that the new remedy for the employee was to be exclusive and that claims of relatives recognized by state law were to be abrogated; *the FELA had been thus authoritatively construed before the Jones Act was passed.*

*Igneri,* 323 F.2d at 266 (emphasis added), *citing New York Cent. & H. R.R. v. Tonsellito,* 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917) (FELA precludes claim brought by father for "loss of services" of minor son injured in course of employment with railroad). Finally, the thrust of the Supreme Court's holding in *Tonsellito* is that FELA affords a remedy to injured workers—and only to workers, not to their relatives: "Congress having declared when, how far, and to whom carriers shall be liable on account of accidents in the specified class, such liability can neither be extended nor abridged...." *New York Cent. & H. R.R. v. Tonsellito,* 244 U.S. 360, 362, 37 S.Ct. 620, 621, 61 L.Ed. 1194 (1917); *see also New York Cent. R.R. v. Winfield,* 244 U.S. 147, 37 S.Ct. 546, 61 L.Ed. 1045 (1917); *Erie R.R. v. Winfield,* 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057 (1917). Thus, the *Tonsellito* rationale ineluctably precludes the present claims for damages for loss of parental and spousal society.[3]

Similarly, compelling evidence precludes Jonathan Horsley's claim for punitive damages. "It has been the unanimous judgment of the courts *since before the enactment of the Jones Act* that punitive damages are not recoverable under" FELA. *Miller v. American President Lines, Ltd.,* 989 F.2d 1450, 1457 (6th Cir.1993) (emphasis added), *citing Kozar v. Chesapeake & O. Ry. Co.,* 449 F.2d 1238, 1240–43 (6th Cir.1971) (citing cases). Once again, therefore, since the Supreme Court's authoritative interpretation of FELA antedated enactment of the Jones Act, *Miles* mandates the conclusion that punitive damages are not available in an unseaworthiness action under general maritime law.

### III

### *CONCLUSION*

Under the analysis prescribed in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), an admiralty court may not extend the remedies available in an unseaworthiness action under the general maritime law to include punitive damages or damages for loss of parental or spousal society. Accordingly, the district court judgment must be affirmed.

*Affirmed. The parties shall bear their own costs.*

### *SO ORDERED.*

---

3. No court of appeals recognizes a claim for loss of parental society under general maritime law. *Murray,* 958 F.2d at 132 n. 3, *citing De Loach v. Companhia de Navegacao Lloyd Brasileiro,* 782 F.2d 438 (3d Cir.1986); *and Madore v. Ingram Tank Ships, Inc.,* 732 F.2d 475 (5th Cir.1984). Moreover, the cognizability of such claims in a

minority of the states, Prosser & Keeton, *Torts* § 125 (5th ed. 1984), would provide no basis under *Miles* for recognizing such a remedy in an action for unseaworthiness—closely akin to a strict liability claim—where it is not even widely available in nonadmiralty actions.